**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                            No. 96-4121

ELRAY ROGERS, a/k/a Elray Rodgers,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
John A. MacKenzie, Senior District Judge.
(CR-95-115)

Argued: May 8, 1997

Decided: July 1, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
CURRIE, United States District Judge for the District of South
Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles E. Haden, Hampton, Virginia, for Appellant.
Kevin Michael Comstock, Assistant United States Attorney, Norfolk,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Elray Rogers appeals his convictions for possession of fifty grams
or more of cocaine base (crack) with the intent to distribute, <u>see</u>
21
U.S.C. §§ 841(a)(1) and (b), and possession of a firearm by a con-
victed felon, <u>see</u> 21 U.S.C. § 922(g)(1). Rogers also attacks his
sen-
tence. We affirm.

I

On June 7, 1995, Investigator Derrick Young of the Norfolk Police
Department purchased a small quantity of crack from Debbie Haynes.
Haynes was arrested and agreed to cooperate against her supplier,
known as "Ray." (J.A. 55).**1**

A few hours later, Investigator Young paged Rogers, and Rogers
returned the page. Haynes answered Rogers' call and asked if he had
any crack. Rogers told Haynes that he did not have any crack at the
moment, but was headed home to "re-up." (J.A. 59). Rogers agreed
to sell Haynes 1/16 of an ounce of crack for $100 and instructed
Haynes to meet him in the parking lot of a nearby Dixie Mart.

As the investigators were waiting for Rogers to arrive at the Dixie
Mart, Haynes identified Rogers as he drove by, traveling in the
direc-
tion of his apartment. At this point, Haynes informed Investigator
Young that Rogers lived in the Bay Terrace Apartments located on
the 1075 block of West Ocean View Avenue in Norfolk.

Five to eight minutes later, Rogers met with Haynes and Investiga-
tor Young. Rogers displayed the crack for Haynes and Investigator
_____
**1** "Ray" was later determined to be Rogers. For purposes of clarity,
we
will refer to "Ray" as Rogers.

Young, but just prior to the sale, the arrest team arrived. As Rogers was being arrested, he discarded the crack and attempted to flee. Rogers was apprehended and placed under arrest.

Investigator Young and another investigator, Todd Sterling, accompanied by Haynes, went to Rogers' apartment to verify that Rogers actually lived there and to secure the apartment pending an application for a search warrant. Investigator Sterling knocked on the door and Janiqua Morris, a ten-year old girl, answered the door. Investigator Sterling told Morris that he was a police officer and asked if there was an adult in the apartment. Morris replied in the negative and also informed Investigator Sterling that her mother had left the apartment after she heard that Rogers was arrested.[2] Morris stated that she was scared and alone in the apartment with a six-month old child. Because Morris said she did not know what to do and the six-month old child was crying, Investigator Sterling entered the apartment to see if the infant was in any danger and to secure the apartment prior to applying for a search warrant.

The infant was located in the rear bedroom. While in the rear bedroom, Investigator Sterling observed, on the closet floor, a digital scale with cocaine residue on it and numerous plastic baggies next to the scale. A neighbor agreed to watch the children and the apartment was secured pending application to a state magistrate for a search warrant.

A state magistrate issued a warrant that was executed by Investigator Sterling and other investigators of the Norfolk Police Department. During the search of Rogers' apartment, the investigators recovered a safe with over 300 grams of crack, two guns, drug paraphernalia and a large sum of cash. The combination to the safe was found in Rogers' pocket.

On July 20, 1995, a federal grand jury sitting in the Eastern District of Virginia returned a four-count indictment against Rogers.[3] Count

_____

[2] Morris described Rogers as "her daddy" to Investigator Sterling. (J.A. 100). Rogers denies that Morris is his daughter.

**3** Rogers was also indicted on state drug and firearms offenses, but these charges were dismissed in favor of the federal prosecution.

I of the indictment related to Rogers' alleged possession of crack at
the Dixie Mart and charged him with possession of crack with the
intent to distribute, see 21 U.S.C. § 841(a)(1). The remaining counts
related to the evidence seized at Rogers' apartment. Count II charged
Rogers with possession of fifty grams or more of crack with the intent
to distribute, see 21 U.S.C. §§ 841(a)(1) and (b). Count III charged
Rogers with using a firearm during and in relation to a drug traffick-
ing offense, see 18 U.S.C. § 924(c)(1). Count IV charged Rogers with
possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g)(1).

Prior to trial, Rogers moved to suppress, among other things, the
evidence seized during the search of his apartment. The district court
denied the motion. Following a jury trial, the jury found Rogers guilty
of the charges contained in Counts II, III, and IV and not guilty of the
charge contained in Count I.**4** Rogers was sentenced to 175 months'
imprisonment on Count II and 120 months' imprisonment on Count
IV, running concurrent with the sentence imposed on Count II. Rog-
ers noted a timely appeal.

II

Rogers argues that the district court erred when it denied his
motion to suppress the evidence seized in his apartment. Accepting
for purposes of this appeal that Investigator Sterling's initial entry
into the apartment was not supported by exigent circumstances, the
district court properly admitted this evidence under the independent
source doctrine. See Murray v. United States, 487 U.S. 533 (1988).

The finding of an unlawful warrantless entry or search does not
automatically render excludable all items seized during a subsequent
search pursuant to a valid search warrant. Id. at 542. Rather, only the
evidence tainted by the illegality is excludable. See United States v.
Salas, 879 F.2d 530, 537-38 (9th Cir. 1989). Thus, under the indepen-
dent source doctrine, "evidence seized pursuant to a subsequently

_____

**4** The district court later set aside the conviction on Count III of

the
indictment in light of <u>Bailey v. United States</u>, 116 S. Ct. 501 (1995),
which was decided after the jury's verdict but before the sentencing hear-
ing. The government does not challenge this ruling.

4

issued warrant, although initially discovered during a search follow-ing an illegal entry, is admissible so long as `the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue.'" <u>Walton v. United States</u>, 56 F.3d 551, 554 (4th Cir. 1995) (quoting <u>Murray</u>, 487 U.S. at 542). In <u>Murray</u>, the Court noted that a search pursuant to a warrant is not an independent search "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if informa-tion obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." 487 U.S. at 542 (footnote omitted).

The district court correctly concluded that the evidence seized in Rogers' apartment pursuant to the search warrant was admissible under the independent source doctrine. First, because the investigators had just witnessed Rogers possess crack and attempt to flee the scene of a crime, the decision to secure a warrant to search Rogers' apart-ment was assuredly not prompted by Investigator Sterling's observa-tion of the items in plain view during his initial entry into the apartment. Second, although the information obtained during the allegedly unlawful entry was presented to the state magistrate in the search warrant application, that information did not affect the magis-trate's decision to issue the warrant, as <u>Murray</u> requires. <u>See id.</u> In assessing whether the information affected the decision to issue the warrant, the district court appropriately applied <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), which directs a court to examine the search war-rant affidavit absent the illegally obtained information to determine whether the untainted portion of the affidavit sets forth probable cause. The district court concluded that the affidavit in this case, excluding Investigator Sterling's observations during his initial entry into Rogers' apartment, provided "more than a substantial basis of a probability that contraband was in" the apartment. (J.A. 120). This conclusion is manifestly correct. The circumstances surrounding Rog-

ers' attempted sale of crack to Haynes and Investigator Young, which
culminated in Rogers' arrest, provided probable cause to believe that
crack would be found in the apartment. In sum, because the informa-
tion obtained during the alleged illegal entry into Rogers' apartment
affected neither the investigators' decision to seek the search warrant
nor the state magistrate judge's decision to issue the search warrant,
the evidence seized pursuant to the warrant was admissible under

5

<u>Murray</u>. <u>See Walton</u>, 56 F.3d at 553-54 (evidence seized in garage admissible under <u>Murray</u> where the information obtained during an earlier alleged illegal warrantless entry of the garage neither affected the decision to seek the search warrant nor the decision to issue it).

III

Rogers also contends that the district court erred when it sentenced him on the basis of possessing "crack" without determining that the government had proven that the drugs involved in Count II were "crack."**5** Rogers concedes that he failed to raise this argument below, but nevertheless contends that the district court's failure to make a specific finding that Count II involved "crack" is plain error. We dis- agree.

Rule 52(b) of the Federal Rules of Criminal Procedure permits an appellate court to correct an error not raised below if there is: (1) error, (2) that is plain, and (3) that affects substantial rights. <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993). If all these require- ments are met, we can exercise our discretion to correct the error if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." <u>Id.</u> (citation and internal quotes omitted).

---

**5** In 1993, the Sentencing Commission amended the Sentencing Guide- lines to include the following definition of cocaine base:

> "Cocaine base," for purposes of this guideline, means "crack." "Crack" is the street name for a <u>form</u> of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicar- bonate, and usually appearing in a lumpy, rocklike form.

United States Sentencing Guidelines Manual § 2D1.1 (emphasis added). Prior to 1993, some courts held that cocaine base under the Sentencing Guidelines included all forms of cocaine base, not just crack, <u>see, e.g.</u>, <u>United States v. Jackson</u>, 968 F.2d 158, 161-63 (2d Cir. 1992) (forms of cocaine base not pure enough to be crack still fall within Sentencing

Guidelines for enhanced sentence), while other courts held that cocaine
base meant crack, <u>see, e.g.</u>, <u>United States v. Shaw</u>, 936 F.2d 412, 415-16
(9th Cir. 1991). The amended definition of cocaine base was promulgated so that other forms of cocaine base other than crack would be treated as cocaine for sentencing purposes. <u>See United States v. Munoz-Realpe</u>, 21 F.3d 375, 376-77 (11th Cir. 1994).

6

In this case, we will assume without deciding that the first three prongs of <u>Olano</u> are met. Such an assumption is of no help to Rogers because the assumed error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. That Count II involved "crack" was undisputed below. Indeed, Count II of the indictment refers to the drugs as "crack," (J.A. 12), and, at sentencing, Rogers never disputed that Count II involved 150 to 500 grams of cocaine base, which means "crack" under the Sentencing Guidelines. Because it was undisputed below that Count II involved "crack" and because Rogers has set forth no plausible argument that Count II did not involve "crack," we are in no position to correct the assumed forfeited error. <u>Cf. Johnson v. United States</u>, 1997 WL 235156, at *7 (U.S. May 12, 1997) (declining to correct <u>Gaudin</u> error where the evidence of materiality was overwhelming and petitioner presented no plausible argument that her false statement under oath was not material).

IV

Rogers raises two additional arguments that he contends should be resolved in his favor. First, he contends that there is insufficient evidence in the record to support his convictions. Second, he contends that the district court erred when it admitted certain evidence at trial. We have reviewed these assignments of error and find them to be without merit. Accordingly, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

7