**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric Arthur WALTON, Defendant–**
**Appellant.**

No. 94–5580.

United States Court of Appeals,
Fourth Circuit.

Argued April 5, 1995.

Decided June 7, 1995.

**ARGUED:** Thomas A. Bergstrom, Philadelphia, PA, for appellant.   Paul Thomas Camilletti, Asst. U.S. Atty., Wheeling, WV, for appellee.

**ON BRIEF:** William D. Wilmoth, U.S. Atty., Sam G. Nazzaro, Asst. U.S. Atty., Wheeling, WV, for appellee.

Before RUSSELL and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion.   Judge LUTTIG wrote the opinion, in which Judge RUSSELL and Senior Judge PHILLIPS joined.

## OPINION

LUTTIG, Circuit Judge:

Following the discovery of 160 pounds of marijuana in his garage, and another seven pounds in his home, appellant Eric Arthur Walton was convicted of, *inter alia,* aiding and abetting in the possession with intent to

distribute marijuana within 1000 feet of a school, in violation of 21 U.S.C. § 860, and conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. § 846. Because of his prior record of drug-related offenses, he received life sentences for both convictions. Walton appeals, claiming that both convictions were tainted by the introduction of unlawfully-obtained evidence, and that the life sentence on the conspiracy count was the product of an incorrect application of the guidelines. We find no merit in either argument, and therefore affirm Walton's convictions and sentences.

## I.

Walton's two evidentiary challenges relate to the same set of facts, which we briefly review here. Walton was suspected of being a large-scale drug distributor and had been under surveillance by local and federal law enforcement officials since 1992. In connection with this investigation, agents, on October 28, 1993, began trailing a motor home from California. This motor home was to end its journey in Wheeling, West Virginia, where Walton resides. In El Paso, Texas, agents observed various individuals loading heavy suitcases (which, the agents concluded, contained drugs) into the motor home. The motor home left El Paso on October 31 and arrived in Wheeling on November 3. Throughout the journey, its driver executed counter-surveillance driving maneuvers.

Once the motor home arrived in Wheeling on November 3, agents observed an individual exit the motor home with a pink bag, which appeared to weigh between five and ten pounds and contain brick-shaped objects, and enter a motel room. A different individual later exited the motel room with what appeared to be the same bag, and drove to Walton's house at 112 Virginia Street in Wheeling.

Later on November 3, agents observed an individual load heavy suitcases from the motor home into a blue Oldsmobile. The following day, Walton drove the blue Oldsmobile across Wheeling and into his garage on Kentucky Street. At this point, law enforcement officials knew, on account of their continuous surveillance from Texas, that suitcases apparently containing drugs were in the trunk of the Oldsmobile in the garage.

Sometime later, as the agents were observing the garage, they saw Walton exit another car and walk toward the garage. The agents arrested Walton at this point, and, fearing that those inside the garage had observed the arrest and might destroy evidence, knocked on the door of the garage. When an occupant of the garage opened the door, the agents entered and observed bricks of marijuana stacked inside.

Following this entry, which the district court later declared to have been illegal, the agents secured the premises and obtained search warrants for the garage, the blue Oldsmobile, and Walton's home. In their application for the three warrants, the agents mentioned that they had entered the garage and seen "bricks of what appeared to be marijuana stacked against the opposite wall [of the garage]." J.A. at 65. Pursuant to the warrants, the agents ultimately seized 160 pounds of marijuana from Walton's garage, and seven pounds from his house.[1]

## A.

Walton contends that the evidence seized in the garage,[2] including the 160 pounds of marijuana, should have been suppressed because the evidence was initially discovered by agents during their illegal entry into the garage. Accepting, for purposes of this appeal, the district court's ruling that the initial warrantless entry into the garage was not supported by exigent circumstances, we conclude that the district court properly admitted the evidence found therein on the authority of *Murray v. United States*, 487

---

1. When agents entered Walton's house, they found Walton's wife attempting to flush marijuana down the commode.

2. The evidence seized in the garage was vital to the government's case, because it was the garage

that was within 1000 feet of a school, and thus it was the marijuana in the garage that produced the § 860 conviction and mandatory life sentence.

U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

In *Murray,* the Court held that evidence seized pursuant to a subsequently issued warrant, although initially discovered during a search following an illegal entry, is admissible so long as "the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue." *Id.* at 542, 108 S.Ct. at 2536. A search pursuant to warrant is not a "genuinely independent search," the Court stated, "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.* (footnote omitted); *see also United States v. Campbell,* 945 F.2d 713, 715–16 (4th Cir.1991).

The district court correctly found that under the criteria set forth in *Murray,* the evidence seized in Walton's garage was the product of a genuinely independent search. First, the officers' decision to seek a warrant authorizing the search of Walton's garage was assuredly not prompted by their observation of marijuana during their unlawful entry into the garage. Agents had been investigating Walton for over a year, had been observing the movements of his travelling co-conspirators for several days, and had followed a trail of marijuana from El Paso to Walton's garage. Indeed, agents had been preparing the search warrant affidavit for several days prior to the garage entry, and added the observations from that illegal entry only at the last moment.

Second, although the information obtained during the unlawful entry was presented to the magistrate in the search warrant application, that information did not affect the magistrate's decision to issue the warrant, as *Murray* requires. *See Murray,* 487 U.S. at 542, 108 S.Ct. at 2535–36. In assessing whether the information affected the decision to issue the warrant, the district court, appropriately following *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), examined the search warrant affidavit absent the illegally-obtained information, to determine whether the untainted portion of the affidavit set forth probable cause. *See United States v. Gillenwaters,* 890 F.2d 679, 681–82 (4th Cir.1989) (employing *Franks* approach in *Murray* context); *United States v. Markling,* 7 F.3d 1309, 1315–17 (7th Cir. 1993) (same); *United States v. Herrold,* 962 F.2d 1131, 1141–43 (3rd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992) (same). The court concluded that the affidavit in this case provided "substantially more than a 'fair probability' that contraband or evidence of a crime would have been found in the garage and the vehicle." J.A. at 47. We find the district court's ruling to be unassailable, and reject Walton's view that "[b]ut for the agents['] observations of marijuana stacked within the garage against the wall, there was no probable cause to search the garage." Appellant's Br. at 13. The investigation of Walton for one year, culminating in the observation of a drug-laden car entering his garage, provided probable cause to believe that drugs would be found within the garage.

Because the information obtained during the illegal entry of the garage affected neither the agents' decision to seek the warrant nor the magistrate's decision to issue it, the evidence seized in the garage was properly admitted under *Murray.*

B.

Walton also argues that all evidence—including seven pounds of marijuana—discovered in a search of his residence at 112 Virginia Street should have been excluded. He concedes that "the search of 112 Virginia Street was pursuant to a warrant, untainted by the prior illegal garage entry," but contends that "there is a complete lack of probable cause justifying this warrant and entry." Appellant's Br. at 14.

When the search warrant affidavit is considered in its totality, it is clear that the warrant to search Walton's home was supported by probable cause: although the affidavit did not state that drugs had at any point been delivered to Eric Walton or into

the 112 Virginia Street residence, it did state that officers had witnessed an individual, apparently carrying drugs in a pink bag, get into a car and drive over to Walton's house. Walton, of course, was a known drug offender. It also stated that the following day, agents had observed Walton approaching his separate garage, into which a car apparently containing drugs had entered. This gave the magistrate probable cause to believe that Walton was associated with the individuals who apparently were distributing drugs, and that controlled substances, drug paraphernalia, and transaction records might be found at 112 Virginia Street.

## II.

Walton next challenges the life sentence he received on his conviction under 21 U.S.C. § 846.[3] The court imposed a life sentence because it concluded that Walton qualified as a "career offender" under U.S.S.G. § 4B1.1.[4] For the reasons that follow, we reject Walton's argument that he is not a "career offender."

█ The sentencing guidelines provide that a defendant is to be considered a "career offender," if

> (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Walton was 42 years old when he was arrested, and his § 846 conviction in this case was for a controlled substance offense. Moreover, there is no question that one of Walton's prior convictions—a 1978 conviction for distributing marijuana, in violation of 21 U.S.C. § 841(a)(1)—was for a controlled substance offense. The only question, therefore, is whether his 1985 conviction (on a guilty plea) for "us[ing] the public telephone system in committing, causing and facilitating the commission of felonies under 21 U.S.C. §§ 841(a)(1) and 846, that is, the distribution of cocaine and the conspiracy to distribute cocaine," J.A. at 141 (presentence report reciting contents of § 843(b) information), in violation of 21 U.S.C. § 843(b),[5] can be considered "a controlled substance offense" for purposes of U.S.S.G. § 4B1.1.

Guideline 4B1.2(2) defines "controlled substance offense" as

> an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense.

The commentary to § 4B1.2 expands the definition of "controlled substance offense" to include "the offenses of aiding and abetting, conspiring, and attempting to commit such offense[ ]." U.S.S.G. § 4B1.2 Commentary Application, n. 1. Thus, the aiding or abetting of an offense described in § 4B1.2(2) is also considered a "controlled substance offense."

We believe that Walton's offense of "us[ing] the public telephone system in committing, causing and facilitating ... the distribution of cocaine and the conspiracy to distribute cocaine," constitutes the aiding and abetting of a § 4B1.2(2) offense, and therefore qualifies as a "controlled substance offense."[6] The distribution of cocaine is clear-

---

**3.** Walton does not challenge the life sentence he received on the § 860 conviction. The district court imposed this sentence pursuant to 21 U.S.C. § 841(b)(1)(A), which provides a mandatory life sentence for a defendant convicted of violating § 860 if the defendant has two or more prior convictions for "felony drug offenses." Walton does not dispute that he has two prior convictions for "felony drug offenses," as defined in § 841(b)(1)(A).

**4.** Walton's career offender status raised his offense level to 37, and his criminal history catego-

ry to VI; this combination calls for a sentence of 360 months to life on the sentencing table.

**5.** 21 U.S.C. § 843(b) prohibits "knowingly or intentionally ... us[ing] any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a *felony under any provision of this* [control and enforcement] subchapter ... of this [drug abuse and prevention] chapter."

**6.** Under our opinions in *United States v. Johnson*, 953 F.2d 110 (4th Cir.1991), and *United States v.*

ly a § 4B1.2(2) offense, and using the telephone system in facilitating the distribution of narcotics is equivalent to aiding and abetting that distribution. Walton's § 843(b) conviction therefore was properly considered a "controlled substance offense" by the district court.

## III.

■ Walton's final contention is that the district judge abused his discretion by refusing to recuse himself from the case. We find no merit in this claim, as it is based on the fact that Walton had been represented by the law firm of Schrader, Stamp, Miller and Recht in four controlled substance cases in the 1970s, at a time when Chief Judge Stamp was a senior partner in the firm. Such an attenuated connection between judge and defendant is not enough to trigger 28 U.S.C. § 455, which requires that a judge recuse himself "[w]here in private practice [the judge or a partner of his] served as a lawyer *in the matter in controversy*," or "in any proceeding in which his impartiality might *reasonably* be questioned" (emphasis added). Chief Judge Stamp therefore rightly declined to recuse himself.

## CONCLUSION

For the foregoing reasons, we affirm Walton's convictions and sentences.

*AFFIRMED.*

*Neal,* 27 F.3d 90, 93 (4th Cir.1994), we may look to the indictment as well as the statutory description of the offense in determining whether a given conviction counts toward career offender status under § 4B1.1.